**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUN 26 2000

JAMES W. McCORMACK, CLERK
By: _____
                    DEPT. CLERK

**FRANK SAINT MARTINEZ**
**Fed. Reg. No. #17906-050**
**P.O. Box 7001**
**TAFT FEDERAL CAMP**
**Taft CA 93268**

## UNITED STATES DISTRICT COURT

### FOR THE EASTERN DISTRICT OF ARKANSAS

**FRANK SAINT MARTINEZ**

      Plaintiff,

vs.

**UNITED STATES OF AMERICA; KATHLEEN
HAWK SAWYER,** Director, Bureau of
Prisons (BOP); **KENNETH P. MORITSUGU,**
M.D. Medical Director, BOP; **WENDY J.
ROAL,** Administrator of National App-
eals, BOP; **IVAN WHITE Jr.,** Regional
Director, South Central Region, BOP;
**GEORGE SNYDER,** Warden, FCI Forrest
City, Arkansas, BOP; **GINNY VAN BUREN,**
Assoc. Warden, FCI Forrest City, Ark-
ansas, BOP; **JOHN DOE,** Regional Health
Service Administrator, South Central
Region Office, BOP; **DAVID HENRY,** He-
alth Service Administrator, FCI For-
rest City, Arkansas, BOP; **DR. J. PR-
INCE,** Clinical Director, FCI Forrest
City, Arkansas, BOP; **FREDDY GARRIDO,**
Asst. Health Service Administrator,
FCI Forrest City, Arkansas, BOP; **Y.
TORO,** Physician Asst., FCI Forrest
City, Arkansas, BOP; **C. IWUAQWU,** Ph-
ysician Asst., FCI Forrest City, Ar-
kansas, BOP; **MARVIN MORRISON,** Warden,
FCI Forrest City, Arkansas, BOP

      **Defendants,**

_____ /

**CIVIL NO. 2-00-CV-00110JF**

**BIVENS COMPLAINT**
Pro Se

This case assigned to District Judge _____
and to Magistrate Judge _____

      COMES NOW, Plaintiff, **FRANK SAINT MARTINEZ,** and as and for

a complaint for relief against the above named defendants for bre-

ch of duty, negligence, deliberate          indifference and

violating the plaintiff's Fifth and Eighth Amendment Rights, the
right to equal protection of the law, and the right to be free
from cruel and unusual punishment, As follows:

## JURISDICTION

1.  This is a **Bivens** action brought prsuant to:

    A. 42 U.S.C. §§ 1983, 1985, 1986:

    B. Federal Tort Claim Act [FTCA], 28 U.S.C. §2671 et seq;
       28 U.S.C. §1346(b) and;

    C. A federal question arising under the Fifth and Eighth
       Amendment of the United States Constitution, Article 3,
       section 2; 28 U.S.C. §§ 1331, 1343 and;

    D. Plaintiff invokes the supplemental juridiction of this
       court under 28 U.S.C. §1367(a) and;

    E. This court has further jurisdiction under 28 U.S.C. §
       1332(a)(1); Complete diversity of the parties and an
       amount in controversy $50,000.

    F. Plaintiff also invokes the pendant jurisdiction of this
       court.

## VENUE

2.  Venue is proper under 28 U.S.C. §1391(A)(2), (A)(3), (b)(3),
(e)(3), and 28 U.S.C. §1402(b).  Venue lies in the Eastern Distr-
ict of Arkansas.  It is the district in which the incident occur-
red and or where the defendants reside.

## PARTIES

3.  Plaintiff, **FRANK SAINT MARTINEZ,** is a federal prisoner of
the United States of America, in the custody of the Attorney

-2-

General (this authority being delegated to the Federal Bureau of Prisons [BOP]), and confined at the Federal Correctional Camp at Taft, California.

4.   The events compiled occurred at FCI Forrest City, Arkansas.

5.   **Defendant UNITED STATES OF AMERICA,** is a proper defendant for all claims brought under the FEDERAL TORT CLAIMS ACT.

6.   **Defendant KATHLEEN HAWK-SAWYER,** (hereinafter referred to seperately as "HAWK-SAWYER"; or together with all others in the term, "DEFENDANTS") is the Director of the Federal Bureau of Prisons, and is responsible for all of it's facilities, overall operation of the BOP, including FCI Forrest City, Arkansas.

7.   Hawk-Sawyer's responsibilities include inter alia, training supervision and performance of all BOP personel operating at those facilities.

8.   Hawk-Sawyer promulgates, authorizes and implements all BOP Policies **including P.S. 6000.05 Health Care Services,** the statement which mandates duty, care and responsibility that the defendants owe plaintiff, and which is also found in 18 U.S.C.A. §4042 et. seq., 28 CFR §§500 et. seq., and Executive Orders 12674 and 12731.

9.   **Defendant KENNETH P. MORITSUGU, M.D.,** (hereinafter referred to seperately as "MORITSUGU"; or together with all others in the term, "DEFENDANTS") is the medical director for the BOP central office, Washington, D.C.

10.   Policy statement says " The Director's authority to provide

for the care and treatment.... has been delegated to the Medical Director."

11. Moritsugu directs and administers all activities related to the ... physical health of inmates.

12. Moritsugu has the authority to make recommendations for the appropiate treatment of inmate's medical needs.

13. **Defendant IVAN WHITE JR.**, (hereinafter referred to seperately as "WHITE"; or together with all other in the term, "DEFENDANTS") is the Regional Director, South Central Region.

14. White is responsible for the supervision, training, and performance of bureau personnel in the regional office, as well as the staff at FCI Forrest City, Arkansas, including the warden, associate warden and health care providers who are responsible for the implementation of BOP Policy Statement 6000.05 concerning the plaintiff's care and treatment.

15. The duty, care and responsibility that defendants owed to plaintiff are found under 18 U.S.C.A. §4042 et. seq.; 28CFR 500 et. seq. and BOP policy.

16. White's authority derived directly from the Director of the BOP, Central Office, Washington, D.C.

17. **Defendant WENDY J. ROAL**, (hereinafter referred to seperately as "ROAL"; or together with all other in the term, "DEFENDANTS") was the administrator of National Inmate Appeals.

18. Roal is responsible for the administration and implementation of BOP Policy Statement 6000.05 concerning plaintiff's care and treatment.

19.  The duty, care and responsibility that she owed to plaintiff is found under 18 U.S.C.A. §4042 et. seq. 28 CFR 500 et. seq., and BOP policy.

20.  Roal's authority derived directly from the Director of the BOP, Central Office, Washington D.C.  Defendant is responsible and her duties are to thoroughly investigate any improperties that could put plaintiff at excessive risk of unnecessary pain and suffering and/or injury.

21.  Roal was personally aware of, and had first hand knowledge of plaintiff's medical condition.

22.  **Defendant JOHN DOE,** (hereinafter referred to seperately as "JOHN DOE"; or together with all other in the term, "DEFENDANTS") Regional Health Service Administrator, South Central Region Office.

23.  John Doe is responsible for preparing responses to plaintiff's administrative remedies concerning plaintiff's medical condition.

24.  John Doe was responsible for compliance, by the health care practioners at FCI Forrest City, with an acceptable standard of medical care and treatment.

25.  The Regional Health System  Administrator had first-hand knowledge of plaintiff's serious medical condition.

26.  **Defendant GEORGE SNYDER,** (hereinafter referred to seperately as "SNYDER"; or together with all other in the term, "DEFENDANTS") was the Warden of FCI Forrest City, Arkansas.

27.  Snyder was responsible for the adequate management of medical treatment to be provided to inmates in his institution.

28.  P.S. 6000.05 requires defendant to report directlt to the BOP Regional Director.

29.  "The Director (Central Office) delegates to the Regioal Directors and Wardens authority...."

30.  The Duty, care and responsibility that the defendant owed to the plaintiff is found under 18 U.S.C.A. §§4042 et. seq., 28 CFR §§500 et. seq., and Bureau of Prison's policy P.S. 6000.05, P.S. 1120.16, P.S. 3420-08.

31.  Snyder was personally aware of and/or had first ahnd knowledge of plaintiff's medical condition.

32.  Defendant MARVIN MORRISON, (hereinafter referred to seperately as "MORRISON"; or together with all other in the term, "DEFENDANTS") was the Warden at FCI Forrest City, Arkansas.

33.  Morrison was responsible for the adequate management of medical treatment to be provided in his institution.

34.  P.S. 6000.05 requires the defendant to report directly to the BOP Regional Director.

35.  The Director (central Office) delegates to the Regional Directors' and Wardens' authority.

36.  The duty, care and responsiblity that the defendant owed to the plaintiff is found under 18 U.S.C.A. §§4042 et.seq., 28 CFR §§500 et. seq., and BOP policy, P.S. 6000.05, P.S. 1120.16, P.S. 3420.

-6-

37.  Morrison was personally aware and/or had first-hand knowledge of plaintiff's medical condition.

38.  **Defendant GINNY VAN BUREN,** (hereinafter referred to seperately as "VAN BUREN"; or together with all other in the term, "DEFENDANT- S") was the Associate Warden of Operations.at FCI Forrest City, Arkansas.

39.  Van Buren was responsible for the operation of the Medical Department and for the supervision, training, and performance of the medical staff to include care and safety in giving plaintiff proper and adequate medical treatment in a timely fashion.

40.  The authority under wgich defendant operates includes the duty, care and responsibilities that she owed to the plaintiff, are found in 18 U.S.C.A. §§4042 et. seq., 28 CFR §§500 et. seq., P.S. 6000.05, P.S. 1120.16, P.S. 3420.08.

41.  Van Buren was personally aware of, and had first-hand knowledge of plaintiff's medical condition.

42.  **Defendant DAVID HENRY,** (hereinafter referred to seperately as "HENRY"; or together with all others in the term, "DEFENDANTS") was the Health Service Administrator at FCI Forrest City, Arkansas.

43.  Henry was responsible for preparing responses to correspondence concerning plaintiff's medical condition.

44.  Henry was also responsible for reviewing plaintiff's medical records so as to·provide adequate treatment and evaluations.

45.  Henry was also responsible for compliance by the health practitioners at FCI Forrest City, Arkansas, with the acceptable standards of medical practice.

46.  Defendant Henry was also responsible for the implementation of BOP Policy, P.S. 6000.05 concerning plaintiff's care and treatment.

47.  The duty, care and responsiblity that defendant owed the plaintiff  is found in 18 U.S.C.A. §§4042 et. seq., 28 CFR §§500 et. seq.

48.  Defendant Henry had first-hand knowledge of plaintiff's medical condition.

49.  **Defendant LEON BALL,** (hereinafter referred to seperately as "BALL"; or together with all others in the term, "DEFENDANTS") was the Health Service Administrator at FCI Forrest City, Arkansas.

50.  Defendant Ball was responsible for preparing responses to correspondence concerning plaintiff's medical condition.

51.  Defendant Ball is responsible for reviewing plaintiff's medical records so as to provide adequate treatment and evaluations.

52.  Defendant Ball was responsible for compliance with BOP policy as well as general medical ethics and standards by the health care practioners at FCI Forrest City, Arkansas.

53.  defendant Ball was responsible for the implementation  of BOP policy, P.S. 6000.05 concerning plaintiff's care and treatment.

54.  The duty, care and responsibility that defendant owed to plaintiff is found under 18 U.S.C.A. §§4042 et. seq., 28 CFR §§500 et. seq.

55.  Defendant Ball had first-hand knowledge of plaintiff's medical condition.

56. **Defendant DR. J. PRINCE,** (hereinafter referred to seperately as "PRINCE"; or together with all others in the term, "DEFENDANTS") was the Clinical Director (CD) at FCI Forrest City, Arkansas.

57. Defendant Prince was responsible for the medical care provided at the prison, including ... maitaining the quality of health records, and evaluating patient care.

58. Defendant Prince is responsible for evaluating patient care through an ongoing quality assurance program that identifies problems and their resolution.

59. Defendant Prince is responsible for the inplementation of BOP policy, P.S. 6000.05, concerning patients treatment and care.

60. Defendant Prince had first-hand knowledge of plaintiff's medical condition.

61. **Defendant FREDDY GARRIDO,** (hereinafter referred to seperately as "GARRIDO"; or togther with all others in the term, "DEFENDANTS") was the Assistant Health Service Administrator at FCI Forrest City, Arkansas.

62. Defendant Garrido was responsible for reviewing plaintiff's medical records so as to provide and continue adequate treatment and evaluations.

63. Defendant Garrido is responsible for performance and compliance with BOP policy, and general medical ethics and standards by health care practitioners at FCI Forrest City, Arkansas.

-9-

64. Defendant Garrido was responsible for the inplementation care and treatment.

65. The duty, care and responsibility that defendant owed to the plaintiff is found in 18 U.S.C.A. §§4042 et. seq., 28 CFR §§500 et. seq.

66. Defendant Garrido had first-hand knowledge of plaintiff's medical condition.

67. **Defendant Y. TORO,** (hereinafter referred to seperately as "TORO"; or togetherwith all others in the term, "DEFENDANTS") was the physician assistant at FCI Forrest City, Arkansas.

68. Defendant Toro was responsible for providing medical care at FCI Forrest City, Arkansas.

69. Defendant Toro is responsible for maintaining the quality of health records.

70. Defendant Toro was responsible for compliance with BOP policy, and general medical standards and ethics.

71. Defendant Toro had first-hand knowledge of plaintiff's medical condition.

72. **Defendant C. IWUAQWU,** (hereinafter referred to seperately as "IWUAQWU"; or together with all others in the term, "DEFENDANTS") was a physician at FCI Forrest City, Arkansas.

73. Defendant Iwuaqwu was responsible for providing medical care at FCI Forrest City, Arkansas.

74. Defendant Iwuaqwu is also responsible for maintaining the quality of health records .

75.  Defendant Iwuaqwu was responsible for compliance with BOP policy and general medical ethics and standards.

76.  The authority under which Defendant Iwuaqwu as well as the other above named defendants is found in 18 U.S.C.A. §§4042 et. seq., 29 CFR §§500 et. seq.,and BOp Policy Statement 6000.05.

77.  Defendant Iwuaqwu had first-hand knowledge  of plaintiffs medical condition.

78.  All of the above named defendants, with the exception of the United States of America, for purposes of this complaint are being sued in their respective individual and not their official capacities.

## GENERAL ALLEGATIONS

79.  Petitioner incorporates by this reference, the allegation of the fact set forth in the foregoing paragraphs 1-78 as if fully set forth here at.

80.  While plaintiff **FRANK SAINT MARTINEZ** was incarcerated at the Federal Correctional Institution at Phoenix, Arizona, Podiatrist Alexander T. Borgeas on June 19, 1996, comfirmed that plaintiff had a severe bio-medical condition (hallux valgus #3), in his left foot.

81.  Dr. Borgeas gave written notice to the medical department that plaintiff was unable to wear steel-toe shoes, and needed specific foot treatment, with follow-up visits required.

82.  By July 15, 1996, plaintiff recieved support shoes, temperature contrast baths, and ice packs.

83.  Plaintiff was transferred to FCI Forrest City, Arkansas, on

September 2, 1997, where he alerted the staff that an initial int-
ake screening, of his severe foot problems, which required contin-
uous treatment and care.

84.  On September 5, 1997, plaintiff went to see defendant HENRY
and asked to be moved to a lower bunk because of his extreme dif-
ficulty in climbing up the metal ladder to his assigned upper bu-
nk.  Plaintiff found it extremely painful to use the metal tubul-
ar ladder.

85.  Defendant HENRY denied plaintiff's request to be assigned
to a lower bunk without. giving him any explanation.

86.  On September 15, 1997, plaintiff again visited defendant
HENRY regarding his foot condition and continuing severe pain.

87.  Plaintiff explained his inability to wear mandatory steel-
toe boots and requested HENRY'S approval to wear soft shoes.

88.  Plaintiff's request was summarily denied.

89.  Plaintiff requested X-rays be taken and proper examination
by a specialist, but defendant HENRY denied those request too.

90.  On September 18, 1997, plaintiff made and attended another
appointment.

91.  Defendant TORO examined plaintiff's foot and referred him
to Dr. Jones who prescribed Motrin, which plaintiff recieved.

92.  On September 25, 1997, plaintiff reported to Dr. Frank Jones,
Clinical Director, that plaintiff was experiencing excruciating
pain in his foot.

93.  Dr. Jones told plaintiff that he would send him to a podi-
atrist for an evaluation, which never took place.

94.   Dr. Jones was subsequently removed from FCI Forrest City, Arkansas.

95.   During November 1997, a health care clinic was held at FCI Forrest City and an orthopedist visually examined plaintiff's foot.

96.   The orthopedist, the plaintiff's problem, was not within his field of expertise and that he was there to strictly measure peoples feet for boots.

97.   Between December 1997 and January 1998, plaintiff waited to receive an evaluation and treatment for his foot, but this never took place.

98.   On febuary 5, 1998, plaintiff approached defendant GARRIDO during mainline at mealtime at the chow hall, during which FCI staff are required to make themselves available to inmates to discuss problems or schedule appoinments for such discussion.

99.   Defendant GARRIDO informed plaintiff at that time that a new clinical director, defendant PRINCE, had been consulted about plaintiff's medical condition and that She (PRINCE) had authorized and ordered soft shoes for the plaintiff.

100.   Plaintiff was also informed that a podiatrist was scheduled to arrive also.

101.  Plaintiff received soft shoes on April 4, 1998, but they were inadequate and actually exacerbated plaintiff's foot pain.

102.   Plaintiff was forced to wear them not withstanding the excruciating pain and extreme discomfort.

103.  Plaintiff informed defendant GARRIDO on May 12, 1998, that the soft shoes were intensifying his pain and made it difficult for plaintiff to walk.

104.  Defendant GARRIDO informed plaintiff thatplaintiff had to
see the podiatrist before such shoes could be authorized.

105.  Plaintiff reminded GARRIDO that he had a history of serious
foot ailments, i.e. his father and sister had had toes amputated.

106.  On May 18, 1998, plaintiff submitted a Request To Staff
Member, (known as a "copout" in the BOP system, which is the first
step of the Administrative Remedy Process in the BOP) to defendant
PRINCE asking to see a podiatrist.

107.  On May 23, 1998, palintiff submitted an Informal Request To
Resolve Grievance (BP-8½).  · On June 1, 1998, Defendant GARRIDO re-
sponded that soft shoes had previously been issued to plaintiff
on April 8, 1998, andthat the plaintiff was on the list to see an
orthopedist.

108.  The plaintiff had been told previously that he was schedul-
ed to see a podiatrist.

109.  On June 3, 1998, plaintiff received acknowledgement from
defendants SNYDER and VAN BUREN.

110.  Plaintiff advised them the lack of attention he was receiving
for his serious medical ailment.

111.  On June 10, 1998, plaintiff received acknowledgement from
defendants SNYDER and VAN BUREN, which stated that plaintiff would
be placed on a medical callout to be evaluated by PRINCE.

112.  The date for this evaluation was June 19, 1998, but no eval-
uation occurred on that date.  Plaintiff waited for several days,
but to no avail as nothing happened.

-14-

113. On June 26, 1998, plaintiff filed a grievance called a Regional Administrative Remedy Appeal (BP-10), effectively bringing to the attention of defendants WHITE and JOHN DOE, (Regional Health Service Administrator of the BOP Regional Office) the plaintiff's serious medical condition, the related severe foot pain, and the lack of medical care being provided.

114. On July 2, 1998, plaintiff received acknowledgement that the Regional Office had received the BP-10.

115. On July 8, 1998, plaintiff was called in to speak with defendant GARRIDO. GARRIDO again informed the plaintiff that he was scheduled to be taken in to see the podiatrist for an evaluation.

116. On July 13, 1998, plaintiff received a response to the BP-10 from defendant WHITE indicating that a podiatrist was scheduled to visit FCI Forrest City and that defendant PRINCE had referred plaintiff to him for evaluation.

117. Plaintiff waited again, but to no avail and nothing happened. Plaintiff concluded that the above defendants had lied to him about scheduling him to see a podiatrist.

118. On August 3, 1998, plaintiff filed a Central Office Admistrative Remedy Appeal (BP-11) with the headquarters office of the BOP, thereby notifying defendants HAWK, MORITSUGU, and ROAL, of his serious medical problem, including the severe pain and the lack of medical care or treatment being rendered to him by FCI Forrest City BOP personnel.

119. On September 10, 1998, defendant ROAL sent a response to notify him that BOP was taking additional time to respond to the BP-11. The response date was changed to October 5, 1998, from September 15.

120. On September 24, 1998, defendant ROAL sent a response to the BP-11 , stating that the plaintiff was scheduled to be evaluated by a podiatrist and if plaintiff experienced pain or discomfort, he should follow normal sick-call procedures.

121. On October 13, 1998, plaintiff went to see defendant Iwuaqwu at the medical department, FCI Forrest City, to complain about his continuing pain.  Plaintiff again explained that the soft shoes issued to him were making his condition more painful and that his foot was getting worse.

122. Plaintiff was given insoles and pain tablets, but the insoles were the wrong size and the pain pills helped very little.

123. On October 18, 1998, plaintiff requested to see the medical staff regarding the presence of blisters in his foot.

124. Plaintiff's blisters subsequently developed into an infection which caused additional pain and nearly made it impossible for him to walk.

125. Plaintiff was given an antibiotic for the infection and Tylenol for the pain.

126. An on duty physician assistant made an appointment for plaintiff to see medical staff the next day.

127. On October 19, 1998, palintiff went to the appointment and was told that he was re-scheduled to come back on the next day on October 20, 1998.

128. Plaintiff informed the medical staff that the infection was speading.  Shirley Holmes, the Medical Department Records Manager,

informed plaintiff that there were not enough physician's assista-
nts there and they were understaffed.

129.  On October 20, 1998, plaintiff went to sick-call and was to-
ld to continue taking the antibiotics.  Plaintiff again complained
of his paralyzing pain to defendant PRINCE.

130.  On October 28, 1998, plaintiff filed a Tort Claim with the
Regional Office of BOP regarding the total lack medical care and
treatment for his serious medical condition.

131.  Plaintiff made another attempt on November 3, 1998, to obta-
in a podiatrist examination.  Defendant PRINCE directed plaintiff
to defendant BALL.

132.  Plaintiff went to the medical department on November 9, 1998,
and requested again to see a podiatrist to explain that the issued
shoes were making his foot condition worse, and that the pain was
unbearable.

133.  Defendant PRINCE noted on the medical record plaintiff's
request to see a podiatrist.  Again, plaintiff was directed to
defendant BALL.

134.  On November 12, 1998, plaintiff was called to the medical
department by defendant GARRIDO who informed him that he was going
to be seen by a podiatrist and an orthotist.

135.  On November 18, 1998, plaintiff was on a call-out to see an
orthotist.  Plaintiff asked defendant GARRIDO about the status
of his podiatrist examination.  Defendant GARRIDO replied that the
orthotist was there to fit several inmates for shoes.  Plaintiff

voiced his reluctance to see the orthotist without first being examined by a podiatrist.  Plaintiff related the November 7, 1997 incident where theorthotist told the plaintiff that a podiatrist should examine plaintiff's foot before having a shoe fitiing.

136.  On November 19, 1998, plaintiff explained his plight to defendant VAN BUREN, who responded that if defendant PRINCE determined that plaintiff's condition was not serious enough to require a podiatrist, that decision would be final.  Plaintiff asked how defendant PRINCE could make such a decision without properly examining plaintiff's foot and taking X-ray's.

137.  On November 23. 1998, plaintiff submitted an Inmate Request Form to defendant VAN BUREN in regard to the November 18, 1998, events and indicated that it was illogical to be fitted for shoes prior to an examination by a podiatrist.  Plaintiff explained that he was not refusing treatment but did not want to be improperly fitted for shoes again.

138.  Defendant VAN BUREN did not respond until December 14, 1998.

139.  Plaintiff was finally taken on December 10, 1998, to a podiatrist, Dr, Fleetwood, who examined plaintiff's foot and took X-rays.

140.  Plaintiff fully explained his medical problems to the podiatrist and made him aware of the excruciating pain he was suffering. Plaintiff told the doctor about the loss of toes by amputation by his father and sister, as he had told the other defendants previously.

141.  Plaintiff conveyed to Dr. Fleetwood that the shoes issued by the institution cause his condition to worsen and the pain to increase.  Dr. Fleetwood recommended a light weight support shoe.

142.  The examination revealed hallux valgus sever left foot, and
the podiatrist determined that surgery was necessary without delay.

143.  On December 10, 1998, plaintiff submitted an Inmate Request
Form asking for a written copy of Dr. Fleetwood's written diagnoses.

144.  Shirley Holmes responded on December 17, 1998, to the Inmate
Request Form, saying that plaintiff should watch the call-out list
for an appointment.

145.  Plaintiff went to the medical department on December 22, 1998,
complaining of intense pain and asked when will he receive surgery
to alleviate the pain. No answer was offered and plaintiff was
given Naproxen, an anti-inflamatory drug.

146.  On January 12, 1999, plaintiff asked defendant PRINCE when
his surgery would be performed.

147.  Defendant PRINCE claimed that the podiatrist did not feel the
ned for the surgery was urgent and therefore she had no intention
of authorizing it.

148.  Plaintiff advised defendant PRINCE that the podiatrist had
told him in no uncertain terms that the surgery was most urgent and
should be carried out without delay.

149.  Defendant PRINCE again stated that she would not authorize it.

150.  On January 21, 1999, plaintiff submitted Request To Staff
Member form to defendant MORRISON outlining the events that took
place in December 1998, and his conversation with defendant PRINCE.

151.  Plaintiff asked for an investigation of why he was not getting
the treatment ordered by the podiatrist.

152.   January 21, 1999, plaintiff requested submitted a Request To
Staff Member form to defendant PRINCE expressing his pain and dis-
comfort, and seeking a formal explanation of why the surgery was
characterized as elective when the podiatrist determined it to be
mandatory.   Plaintiff noted that his condition could cripple him if
not attended to right away.

153.   on Febuary 2, 1999, plaintiff filed an Informal Resolution
Attempt (BP-8) dealing with him not receiving medical treatment in
a timely manner.

154.   On Febuary 4, 1999, ·plaintiff was called to to a meeting with
Unit Manager Gilley and defendant BALL to discuss the situation.
Defendant BALL indicated that he would request agreement from defe-
ndant PRINCE for referral to the BOP headquarters for approval of
surgery.

155.   Because defendants refused plaintiff's request to procure from
them a copy of Dr. Fleetwood's recommendation that plaintiff receive
surgery without delay, plaintiff called his sister Patty Ford.
He asked her to telephone Dr. Fleetwood to obtain copies of his
examination, diagnosis, X-rays, and recommendation that palintiff
be operated on immediately without delay.

156.   Patty Ford called Dr. Fleetwood on that day of Febuary 4th.
She told the doctor that the plaintiff was still experiencing excr-
uciating pain and was requesting to see Dr. Fleetwood again.

157.   Dr. Fleetwood told Patty Ford that he would call the FCI and
speak with defendant BALL, H.S.A. and request that plaintiff be
brought back to him for further evaluation.

158.  Dr. Fleetwood asked Patty Ford to call him back the next day.

159.  Patty Ford called Dr. Fleetwood on Febuary 5th, the next day.
Dr. Fleetwood had reported to her that he spoken to defendant BALL
about getting plaintiff back to his office for treatment, and he was
told by defendant BALL, "No, they would not."

160.  Dr. Fleetwood then told Patty Ford that plaintiff needed
immediate surgery, but there was nothing more he could do, if the
FCI refused to bring plaintiff back to see him.  **See affidavit of
Patty Ford attached.**

161.  In Febuary of 1999, Patty Ford received from Dr. Fleetwood's
office, a single document dated February 9, 1999, dealing with the
plaintiff's examination, which specifically called for immediate
surgery on plaintiff's foot.

162.  Plaintiff was called on Febuary 9, 1999, to see defendant BALL
for the purpose of getting a copy of Dr. Fleetwood's written analysis.
Plaintiff was given a copy of a one page document dated Febuary 9,
1999, identical to the copy that Patty Ford had received.  However,
plaintiff was also presented with a hand-wrtten note, which purport-
edly was signed by Dr. Fleetwood indicating that surgery was not urgent

163.  Patty Ford called Dr. Fleetwood about the note, and he told her
that defendant BALL had insisted that he write the note.

164.  A Request for Administrative Remedy (BP-9) was filed by plaint-
iff on March 1, 1999, together with a Request To Staff Member, addresse
to defendant VAN BUREN, questioning the unreasonable delay in surgery.
NO response to this request was ever received by plaintiff by any of
the defendants.

165.  On March 12, 1999, plaintiff submitted yet another Inmate
Request Form to defendant VAN BUREN.  The request outlined a conv-
ersation that took place earlier that day between plaintiff and
defendants VAN BUREN and BALL wherein defendant PRINCE stated that
she intended to rely exclusively on her own opinion that the plain-
tiff's surgery was elective, and that was final.  Defendant PRINCE
further stated that she did not plan to consider the diagnoses of
an outside specialist.  Plaintiff questioned the validity of her
conclusions about his need for surgery, when those conclusions were
solely based on a cursory examination of plaintiff's foot without
taking X-rays of it.

166.  On March 19, 1999, plaintiff filed an Inmate Request Form to
defendant MORRISON.  In this communication, plaintiff complained
about the delaying tactics that the institution was implementing
against him, when his need for surgery was immediate.

167.  Plaintiff was finally taken to Baptist Memorial Hospital in
Forrest City on April 26, 1999, where Dr. Bhekumu Khumalo performed
the urgently needed foot surgery.

168.  Dr. Khumalo's specific post operation instructions to the
plaintiff, stated in the presence of the defendants' agents who had
taken the plaintiff there, were the plaintiff needed to return in
one week for a follow-up examination.

169.  Plaintiff's foot dressing was to be kept dry and not removed
His foot was to be elevated and iced and plaintiff was to rest.

170.  On May 9, 1999, plaintiff submitted an Inmate Request Form
to defendants VAN BUREN and MORRISON to make them aware that it had

been three weeks that plaintiff's surgery had been done, and plain-
tiff had not been taken back to Dr. Khumalo within one week as the
doctor had specifically instructed them to do.

171.  Plaintiff further reminded defendants that Dr. Khumalo had
specifically instructed that the bandages were to be removed person-
ally by him one week after surgery.

172.  Plaintiff also reported that his suffering was ongoing, and
he was experiencing extreme pain, which he wanted to discuss with
Dr. Khumalo.

173.  On May 12, 1999, plaintiff tried to obtain special medical
tape to secure a plastic bag over his bandaged foot to keep out the
moisture.  This was in keeping with Dr. Khumalo's instrucions to
keep his foot dry in order to avoid complications, particularly
infections.

174.  Plaintiff had obtained medical tape previously, but was denied
on this date by defendants BALL and TORO who told plaintiff that
they already have given him tape on May 5th.

175.  Plaintiff indicated that he need more tape so that he could
shower and keep his bandaged foot dry, but the defendants still
refused.him.

176.  On May 14, 1999, plaintiff talked with case manager Lowe
about his need for special medical tape to secure the plastic bag
around his bandaged foot.  Ms. Lowe made a phone call to the medical
department and then told plaintiff to see defendants TORO and IWUAQWU.

177.  Plaintiff went as instructed.  When plaintiff got to medical
he was severely chastised by defendants TORO and IWUAQWU for asking
for medical tape.  They accused him of using too much tape, but

plaintiff responded that he was only following instructions that
Dr. Khumalo had given him regarding keeping his foot dry until the
doctor could personally remove the bandages.  Without a suffient
amount of tape to tape the plastic bag around the plaintiff's foot,
plaintiff was unable to take a shower for three days.

178.  Plaintiff even offered to pay for the tape, but he was refused.

179.  Plaintiff also complained to the medical staff regarding him
not being taken back within one week to see Dr. Khumalo.

180.  Defendants TORO and IWUAQWU attempted to tape the plaintiff's
foot themselves, but did such a poor job that plaintiff had to go see
defendant BALL who finally relented and brought plaintiff a roll of
medical tape at the end of the day for him to keep.

181.  On May 13, 1999, plaintiff filed an Inamte Request Form directed
to defendants VAN BUREN and MORRISON, complaining about the May 12th
incident regarding the medical tape.

182.  On May 17, 1999, plaintiff filed a formal B-P 9 grievance
to defendant MORRISON outlining the May 12th, 1999 events involving
the medical tape.

183.  On May 27, 1999, plaintiff received a response to the May 13,
1999 Inmate Request Form from defendant VAN BUREN indicating that
plaintiff had been provided with medical tape.

184.  On June 15, 1999, plaintiff was transferred to the Federal
Prison Camp in Boron, California.  Upon arrival on June 17,1999,
plaintiff advised the medical staff there that he continued to
suffer foot pain, that his foot was swollen and he needed follow-
up treatment, which he never received at FCI Forrest City, Arkansas.

185.  On June 22, 1999, plaintiff received a response from defendant MORRISON to his MAy 27, 1999, B-P 9 greivance.  Essentially they had told that they had provided medical tape to him.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

186.  Petitioner incorporates by this reference the allegation of fact as set forthin the foregoing paragraphs 1 to 185 as if fully set forth hereat.

187.  As evidenced above, plaintiff has meticulously and diligently documented and finally exhausted all of his administrative remedies regarding his medical condition and the deliberate and intentional indifference of all defendants to his serious medical needs.

188.  Plaintiff's last administrative remedy was exhausted on September 24, 1998.

189.  Plaintiff also filed a Tort Claim in the South Central Region Office of the Bureau of Prisons on October 20, 1998.  The claim was denied and plaintiff filed a letter for reconsideration.

190.  The Tort Claim was denied on January 28, 2000.

191.  Plaintiff having exhausted all administrative remedies, elected to exercise his option to bring suit under 42 U.S.C. §1983 and §1985, and also under the FTCA, 28 U.S.C. §§2671 et. seq., and 28 U.S.C. §1346(b).

## FIRST CAUSE OF ACTION

192.  Petitioner incorporates by his reference the allegation of fact as set forthin the foregoing paragraphs 1 to 191 as if fully set forth hereat.

193.  Defendants were negligent in their actions in not providing plaintiff the recommended medical care and intentionally protracting

-25-

the medical treatment for plaintiff's serious medical condition.

194. Defendants inflicted upon the plaintiff by their negligence in preventing and allowing plaintiff's condition to culminate to the point where surgery was the only option. Causing the complications that the plaintiff now suffers the loss of flexibilty, in plaintiff's foot, and pain and cramping in foot.

195. Defendant's actions and inactions caused and excerbated plaintiff's serious medical condition, also allowing plaintiff to suffer and continues to suffer sleeplesness due to the chronic pain and cramping that occurs on a regular basis, and emotional distress.

196. Defendant's actions all took place in the Federal Correctional Institution, FCI Forrest City, Arkansas.

197. All forementioned actions took place during the years of 1997, 1998, and 1999.

198. The defendant should be required to pay for damages and any future medical cost incurred by plaintiff.

### SECOND CAUSE OF ACTION

199. Petitioner incorporates by this reference the allegations of fact as set forthin the foregoing paragraphs 1 to 198 as if fully set forth hereat.

200. Defendants breach their duty in not providing plaintiff with the necessary medical care.

201. Defendants aquiescence contributed to plaintiff's damaged foot, and pain and suffering along with the mental anguish suffered through out plaintiff's efforts in seeking medical treatment.

202. Defendants breach their duty in preventing and allowing plaintiff to endure and causing the loss of flexibility in plaintiff's

foot and exacerbating plaintiff's pain and suffering.

203. Defendants breach their duty in deliberately protracting medical treatment for plaintiff's serious medical condition.

204. Defendants were derelict in their duty in following-up and properly addressing plaintiff's condition so as to receive the recommended medical treatment.  In which, the plaintiff's diligent and persistent efforts to obtain treatment and relief in minigating his condition only fell upon the apathy of the defendants. Thus allowing plaintiff to endure the excruciating pain and suffering, mental anguish, and flexibility of plaintiff's foot.

205. Defendants breach of duty all occurred at FCI Forrest City, Arkansas, South Central Regional Office of the B.O.P. and the Central Office of the Bureau of Prisons.

206. All forementioned action took place during the years of 1997, 1998, and 1999.

207. The defendants should be required to pay for the damage and any future medical cost incurred by plaintiff.

### THIRD CAUSE OF ACTION

208. Petitioner incorporates by this reference the allegation of fact as set forthin the foregoing paragraphs 1 to 207 as if fully set forth hereat.

209. Defendants engaged in a methodical pattern of deliberate indifference to plaintiff's urgent medical treatment.  Defendant deliberately denied plaintiff any medical relief.

210. Plaintiff was denied a soft shoe pass.

211. Plaintiff was denied a lower bunk pass.

212. Plaintiff was repeatedly denied a podiatrist periodic evalu-

ations and treatment, as recommended by specialist.

213. Plaintiff was denied supportive walking shoes to alleviate the pain caused by inadequate shoes issued by Defendants.

214. Defendants actions reached a level of unconscionability, by the repeated denials that the defendants kept imposing on plaintiff.

215. Defendants behavior does not even reach the minimum standards that society has set fort in community care.

216. Defendants actions by deliberate                 indifference was the causation of plaintiff's pain and suffering, existing chronic pain and loss of flexibility in the left foot.

217. Defendants actions of deliberate indifference resulted in plaintiff's pain and suffering, mental anguish, and damaged foot, all taking place at FCI Forrest City, Arkansas.

218. All forementioned actions took place during the years of 1997, 1998, and 1999.

219. The defendants should be required to pay for damages and any future medical cost incurred by plaintiff.

### FOURTH CAUSE OF ACTION

220. Petitioner incorporates by this reference the allegation of fact as set forthin the foregoing paragraphs 1 to 219 as if fully set forth hereat.

221. Defendants violated plaintiff's Fifth Amendment Right, which promulgates equal protection by the law.

222. Plaintiff was denied his right to to medical treatment for his serious medical condition.

223.  Defendants protracted plaintiff's efforts by being evaluated by a podiatrist in a timely manner.

224.  Defendants having plaintiff's medical records for review and bringing it to the defendants attention, deliberately thwarted plaintiff from receiving the prescribed treatment.  Thus violating plaintiff's Due Process and Equal Protection of the Law.

225.  Defendants failed to make any attempts with the podiatrist recommendations in treating the plaintiff's foot.

226.  Defendants failed to follow up on plaintiff's post-operation care and blocked plaintiff's efforts to comply with the surgeons instructions to prevent further complications or infections in plaintiff's foot.

227.  Defendants' actions caused plaintiff to endure unnecessary excruciating pain in plaintiff's foot, extreme mental anguish, distress, and the loss of mobility in his foot.

228.  All forementioned actions took place during the years of 1997, 1998, and 1999.

229.  The defendants should be required to pay for damages and any future medical cost incurred by plaintiff.

### FIFTH CAUSE OF ACTION

230.  Petitioner incorporates by this reference the allegation of fact as set forthin the foregoing paragraphs 1 to 229 as if fully set forth hereat.

231.  Defendants violated the plaintiff's Eight Amendment Right, in violation of state and federal statutes and the U.S. Constitution.

232.  Defendants did so by denying plaintiff medical treatment,

and imposing on him unnecessary pain and suffering, mental anguish, and distress in deliberately protracting the prescribed treatment.

233. Defendants repeatedly lied to plaintiff about being scheduled to see a podiatrist.

234. Defendants actions were willful, intentional, and deliberate against plaintiff. Defendants actions clearly constitute "Deliberate Indifference" and "Cruel and Unusual Punishment," in violation of state and federal statutes and the U.S. Constitution.

235. Defendants actions caused plaintiff unnecessary pain and suffering, mental anguish, mental distress and the loss of mobility in plaintiff's left foot.

236. All forementioned actions took place during the years of 1997, 1998, and 1999.

237. The defendants should be required to pay for damages and any future medical cost incurred by plaintiff.

**RELIEF**

238. Wherefore, plaintiff respectfully request the following relief:

A. Judgement against all defendants, jointly and severally, for actual damages in an amount to be proven at trial;

B. Judgement against all defendants, jointly and severally, for exemplary damages in the amount to be proven at trial;

C. Court cost and attorney's fee's;

D. Any further relief that to this court seems just and proper, to which plaintiff is entitled to.

## DEMAND FOR TRIAL BY JURY

239.   Plaintiff demands a jury trial in this matter, except those brought under the Federal Tort Claims Act.

DATED:  **6/13/00**    At Taft, California

FRANK SAINT MARTINEZ
Plaintiff Pro Se

I declare under the penalty of perjury that the foregoing is true, accurate and complete, to the best of my knowledge and recall.

**6-13-00**
__Date

FRANK SAINT MARTINEZ

## CERTIFICATE OF SERVICE

This document is hereby filed on **6-22-00**, 2000, by placing copies of the same in the prison mailbox designated legal mail, pursuant to **Houston v. Lack**, 487 US 266 (1988) and served upon:

**United States of America**

**Kathleen Hawk Sawyer**
Director Bureau of Prisons
320 First St. NW
Washington D.C. 20534

**Kenneth P. Moritsuqu**
M.D. Medical Director
320 First St. NW
Washington D.C. 20534

**Ivan White Jr.**
Regional Director,
South Central Region
4211 Cedar Springs Rd. Ste. 300
Dallas TX 75219

**Wendy J. Roal**
Administrator of National Appeals
320 First St. NW
Washington D.C. 20534

**John Doe**
Regional Health Service Admstr
South Central Regional Office
4211 Cedar Springs Rd Ste. 300
Dallas TX 75219

**George Snyder**
Warden
F.C.I. Lexington KY
3301 Leestown Rd.
Lexington KY 40511-8799

**Ginny Van Buren**
Associate Warden
B.O.P., F.C.I. Forrest City
310 N. Forrest Street
Forrest City AR 72335

-31-

**David Henry**
Health Service Administrator
F.C.I. Lompoc
3901 Klein Blvd
Lompoc CA 93436

**Leon Ball**
Health Service Administrator
F.C.I. Forrest City
310 N. Forrest Street
Forrest City AR 72335

**Dr. J. Prince**
Clinical Director
F.C.I. Forrest City
310 N. Forrest Street
Forrest City AR 72335

**Freddy Garrido**
Asst. Health Service Admstr.
F.C.I. Forrest City
310 N. Forrest Street
Forrest City AR 72335

**Y. Toro**
Physician Assistant
F.C.I. Forrest City
310 N. Forrest Street
Forrest City AR 72335

**C. Iwuaqwu**
Physician Assistant
F.C.I. Forrest City
310 N Forrest Street
FOrrest City AR 72335

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

FRANK SAINT MARTINEZ

May 13, 2000

AFFIDAVIT

IN SUPPORT OF CIVIL COMPLAINT

COMES NOW PATRICIA MARTINEZ FORD, Being First Duly Sworn, and Deposes and States
As Follows:

I Patricia Martinez Ford am a United States Citizen and reside in Palm Desert, CA.

1) On January 29, 1999 I called Dr. Fleetwood on the request of my brother,
(Frank Saint Martinez) to ask Dr. Fleetwood for a copy of his evaluation
and recommendation for my brother's serious medical condition.  Dr. Fleetwood
respond positively  conveyed to me that he would mail me a copy and stated
that my brother needed the surgery to correct his condition and to alleviate
the pain.

2) On FEBRUARY 4, 1999, my brother Frank call me telling me of the pain he
felt in his foot and the inability to walk.  I asked him what is the
Institution doing to address his condition and he replied "They don't want
to give me the surgery."  My brother ask me to call Dr. Fleetwood and to
tell him of the excruciating pain and the difficulty in walking that he was
having.  I called Dr. Fleetwood and expressed my most serious concerns as to
why my brother was not receiving medical treatment and conveyed to Dr. Fleetwood
my brothers symptoms.  I told him that my brother Frank requested to see him
because he was experiencing tremendous pain and that the Institutional
Physcian was not alleviating the condition.  Dr. Fleetwood told me that he
would call the Federal Correctional Institution and request to bring back
my brother to his office for further evaluation.  Dr. Fleetwood asked me
to call back the next day.

3) On February 5, 1999, I called Dr. Fleetwood.  Dr. Fleetwood told me that he
had spoken with Mr. Ball the Health Services Administrator of the F.C.I.,
about getting my brother to his office for treatment, and was told by
Mr. Ball "NO, they would not".  Dr. Fleetwood told me that my brother needed

the surgery, but that there was nothing he could do.  It was up to the Administration at the F.C.I.

4) On February 12, 1999 I called Dr. Fleetwood's office.  I was calling in regards to the status of the letter describing my brothers evaluation and recommendation for surgery. Dr. Fleetwood's office told me that the letter had already been mailed and that I should be receiving it very soon.  Later that afternoon I received it in the mail.  I promptly made a copy and mailed it to my brother.

5) On February 19, 1999, my brother Frank called me.  It was in regards of a second letter that was given to him by Mr. Ball at the institution.  My brother told me it was sent via fax from Dr. Fleetwoods office.  My brother told me that it stated that his surgery was not urgent.  In speaking with Dr. Fleetwood regarding the second letter he told me that he did write it, but that Mr. Ball and the Institution wanted a second letter and even told him what to write and what it should say in the second letter.  Dr. Fleetwood again told me that it was out of his hands.


Dated and Signed This ___17___ day of __May__ , 2000

_Patricia Martinez Ford_
Patricia Martinez Ford


Sworn and Subscribed to before me This _17_ day of _MAY_ , 2000

_____
Notary Public

STATE OF CALIFORNIA,

COUNTY OF _____RIVERSIDE_____ } S.S.

On _____May 17, 2000_____, before me, _____Philip S. Klatchko_____
_____, a Notary Public in and for said County and State, personally

appeared _____PATRICIA MARTINEZ FORD_____

---

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

Philip S. Klatchko

FOR NOTARY SEAL OR STAMP

PHILIP S. KLATCHKO
COMM. #1242592
Notary Public-California
RIVERSIDE COUNTY
My Comm. Exp. Nov. 20, 2003

ES11

---

STATE OF CALIFORNIA,

COUNTY OF _____ } S.S.

On _____, before me, _____
_____, a Notary Public in and for said County and State, personally

appeared _____

---

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

FOR NOTARY SEAL OR STAMP